UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA,

Plaintiff,

v. CR No. 05-00056-01S

JOSEPH A. BEVILACQUA, JR.

Defendant.
_______________________________/

**DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR REDUCTION IN SENTENCE AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Joseph A. Bevilacqua, Jr. ("BEVILACQUA"), by and through his undersigned counsel, files this Motion for Downward Departure and/or Reduction in Sentence pursuant to U.S.S.G. §§ 5K2.0, 5K2.20 and 18 U.S.C. § 3553 and Incorporated Memorandum of Law, and as grounds therefore, states as follows:

1. For approximately thirty (30) years, BEVILACQUA practiced law as a criminal defense lawyer in private practice. As a result of his involvement in this case, BEVILACQUA has received much more media attention in the last nine (9) months than he had previously received during thirty (30) years of practice before this case. Moreover, public interest in this case has caused the news media to focus attention on BEVILACQUA, including stories completely unrelated to this case.

2. The media attention has been extraordinary in that, were it not for BEVILACQUA's involvement in the instant case, he would more than likely not have been the subject of such media scrutiny. Moreover, a typical defendant in a case such as this one is not subjected to this level of media attention and is certainly not the subject media

attention for happenings completely unrelated to the underlying case.

3. This type of media coverage, reporting about items unrelated to a pending case, is something that the vast majority of criminal defendants do not experience. It is important to not that media attention is not a factor that was considered by the sentencing commission in drafting the United States Sentencing Guidelines. Therefore, the effects of the media coverage may be considered by this Court as a basis for a downward departure pursuant to U.S.S.G. § 5K2.0.

4. As a direct result of his convictions, BEVILACQUA lost his license to practice law. Prior to losing his license to practice, BEVILACQUA worked exclusively as a criminal defense attorney for thirty (30) years. Even though BEVILACQUA did not utilize his skills as an attorney in the commission of the offenses of which he has been convicted, he nevertheless has lost the ability to earn a living in the only way he has known for thirty (30) years. This is also a basis for a downward departure that the sentencing commission did not consider. As such, this Court has authority to depart downward from the guidelines range pursuant to 5K § 2.0.

5. BEVILACQUA's actions in the commission of the offenses of which he has been convicted was aberrant behavior. During the first thirty (30) years (approximately) of his practice of law, BEVILACQUA did not engage in conduct similar to the conduct underlying his convictions in the instant. BEVILACQUA's lapse in judgment in committing the criminal acts in the instant case was related to his mental and emotional conditions at the time of the offenses. BEVILACQUA had no personal motivation for committing the offenses in that the only possible consequences to BEVIACQUA were negative – and clearly the two convictions he has suffered, along with the loss of his license

to practice law, are negative consequences.

6. This Court also has the authority to sentence BEVILACQUA below the range prescribed by the advisory sentencing guidelines pursuant to 18 U.S.C. § 3553. A sentencing court must take into consideration several factors in determining a sentence. See, 18 U.S.C. § 3553. BEVILACQUA's case presents a number of factors, including the aforementioned factors that can be considered pursuant to U.S.S.G. § 5K2.0, that warrant a sentence below the range prescribed by the advisory sentencing guidelines.

7. In light of the foregoing, BEVILACQUA respectfully suggests that a sentence of probation satisfies the statutory requirements of 18 U.S.C. § 3553, and would be a reasonable sentence.

## MEMORANDUM OF LAW

### 1. Media Attention and its Effects on Defendant and Defendant's Family

BEVILACQUA has been the subject of numerous media reports in newspapers, on television, and in other media sources. The criminal case that resulted from the "Plunder Dome" investigation was a high profile criminal case involving numerous defendants who were public figures. Therefore, media attention on the criminal case was understandable. Even the media reports of BEVILACQUA's involvement in that case, and in this case, were understandable and uncommon for such cases that maintain high levels of public interest. What is different about the media reports of BEVILACQUA is that several reports have cast BEVIOLACQUA in a very negative light and yet are completely unrelated to the instant case. Several "news" sources appear to have gone out of their way to include "news" stories that portray BEVILACQUA in an unfavorable light. The typical defendant in a criminal case is not subject to such media reports.

Effects of media attention on a defendant in a criminal case have been determined to be a valid basis for a downward departure. See, Koon v. United States, 518 U.S. 81, 112 (1996) (holding that susceptibility to abuse in prison because of national media coverage of the case coupled with defendants' status as police officers was a basis which the district court could consider in determining whether a downward departure was warranted).

Although BEVILACQUA does not suggest that the media attention he has received will make him susceptible to abuse in prison, BEVILACQUA's argument is similar to the argument made in Koon in that media attention in each case had a negative impact on the defendants. This Court is aware that BEVILACQUA has been the subject of multiple news stories unrelated to the instant case. This type of media attention is not present in a typical case, and it has severely damaged BEVILACQUA's reputation in the eyes of the Court.

As the Supreme Court stated in Koon:

> We conclude, then, that a federal court's examination of whether a factor can ever be an appropriate basis for a departure is limited to determining whether the [Sentencing] Commission has proscribed, as a categorical matter, consideration of the factor. If the answer to the question is no – as it will be most of the time – the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline.

Koon, 518 U.S. at 109. Media attention unrelated to the case pending against a defendant and the effects of that media attention on the defendant and his family was not proscribed by the guidelines. Moreover, the nature of the media attention present in the instant case takes the case outside the heartland of perjury and criminal contempt cases. Therefore, a

downward departure is warranted based on the negative impact on BEVILACQUA and his family of media reports unrelated to the instant case.

**2. Aberrant Behavior**

Pursuant to USSG § 5K2.20 (Nov. 2001), a sentencing court may depart downward from the guidelines range if the defendant's criminal conduct constituted aberrant behavior. The guidelines define "aberrant behavior" as "a single criminal occurrence or single criminal transaction that (A) was commited without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." USSG § 5K2.20, comment. (n.1).

BEVILACQUA's conduct underlying his convictions conforms to the definition of "aberrant behavior" contained in the guidelines. BEVILACQUA's two convictions were a single criminal transaction in that the second of the two (perjury) was an "exculpatory no" given when asked if had committed the first offense (criminal contempt). The two offenses are thus clearly connected as one transaction even though they occurred at separate points in time.[1] With respect to the other elements within the definition of "aberrant behavior," BEVILACQUA's conduct satisfies each one. There was no significant planning – in fact, BEVILACQUA's conduct was the antithesis of significantly planned conduct. BEVILACQUA committed a thoughtless act in disseminating the discovery materials, and

[1] Moreover, as the Presentence Investigation Report ("PSI") correctly states, the two offenses should be grouped together in a single group for sentencing pursuant to USSG § 3D1.2(c). See, PSI ¶ 30. Moreover, the counts could and should be grouped together pursuant to USSG § 3D1.2(a) as the two counts represented a single transaction.

he "panicked" when asked at a later date whether he was the source.[2] Additionally, BEVILACQUA's conduct was of limited duration in that the total conduct for both offenses involved giving video cassettes to another person and answering a question asked in the negative. Finally, BEVILACQUA is a criminal history category I defendant with no prior convictions, and, prior to the conduct underlying the instant case, he lived a law-abiding life.

USSG § 5K2.20 also instructs sentencing courts that they may consider the defendant's mental and emotional conditions, employment record, record of prior good works, motivation for committing the offense, and efforts to mitigate the effects of the offense. The First Circuit has concluded that District Courts need to consider the "totality of the circumstances" in determining whether a downward departure for aberrant behavior is warranted. See, United States v. Grandmaison, 77 F.3d 555, 563 (1st Cir. 1996). The Court in Grandmaison specifically mentioned those factors included in USSG § 5K2.20, and included other factors as well. Under both USSG § 5K2.20 and the Grandmaison test, BEVILACQUA's conduct constituted aberrant behavior.

BEVILACQUA's conduct in the instant case was not planned; it was spontaneous and exhibited a lack of thought. See, Grandmaison, 77 F.3d at 563 ("Spontaneity and thoughtlessness may also be among the factors considered" in determining whether a downward departure for aberrant behavior is warranted). BEVILACQUA did not engage in the criminal acts for any potential pecuniary gain, and he received no actual pecuniary gain. Id. In fact, BEVILACQUA has lost tremendous earning potential as a result of his convictions while receiving no pecuniary benefit at any time. BEVILACQUA's mental and emotional conditions, which contributed to his commission of the offenses, have been

[2] BEVILACQUA testified thusly previously on December 9, 2004, at the sentencing hearing of Mr. James Taricani in In Re: Special proceeding C.A. No. 01-47.

documented in the Presentence Investigation Report ("PSI"), and this Court may consider them in determining whether a downward departure is warranted. BEVILACQUA has a record of being self employed as an attorney for approximately thirty (30) years, during which time he represented people from all walks of life who were accused of violations of criminal law in state and federal courts. BEVILACQUA's prior good works have been set forth in part in the PSI, and this court may consider same in determining whether a downward departure is warranted. Finally, BEVILACQUA made an effort (albeit a late one) to mitigate the effects of his offenses – and in particular to mitigate the effects on Mr. James Taricani – by revealing himself as the source of the discovery materials. All of these factors present in the instant case demonstrate that a downward departure for aberrant behavior is warranted in the instant case. In sum, BEVILACQUA's "crime is so spontaneous, and ill-conceived, and such a marked deviation from his prior life that it has all the characteristics of the foolish and thoughtless act" that constituted aberrant behavior. United States v. Langille, 324 F.Supp.2d 38, 43 (D. Maine 2004).

**3. Collateral Consequences of Convictions (Loss of License to Practice Law)**

BEVILACQUA has lost his license to practice law as a result of his convictions. Automatic disbarment is a severe punishment in and of itself so that, regardless of the sentence imposed, BEVILACQUA will be doubly punished for his crime. BEVILACQUA's law practice was his sole source of income during the thirty (30) years which he practiced. BEVILACQUA is no longer able to earn income in the only profession in which he has worked. After practicing law for thirty (30) years, BEVILACQUA will now be unable to earn a living at his chosen profession. This is a mitigating circumstance which was not adequately taken into consideration by the

Sentencing Commission and is the type of circumstance for which § 5K2.0 allows a departure, i.e., it takes BEVILACQUA's case outside of the "heartland" of cases.

BEVILACQUA's case is distinguishable from many cases in which lawyers have been disbarred as a result of criminal convictions in that BEVILACQUA did not employ his skills as an attorney in committing either of the offenses of which he has been convicted. Loss of a license has been found to warrant downward departure prior to the enactment of the guidelines. In U.S. v. Doe, 53 F.R.D. 361 (S.D. NY 1971), the court departed downward and reduced the defendant's sentence, finding that the revocation of the defendant's Certified Public Accountant license was punishment to the defendant. The court found that this was a mitigating circumstance in formulating a sentence:

> While it may be well said that every member of a profession is fully aware that he endangers his license when he violates the law's prohibitions, the fact remains that when the loss actually occurs it is most severe; *obviously it is not among the losses sustained by the vast majority of offenders*. From our judicial experience we learn that the possible loss of professional standing rarely occurs to the offender; he thinks first of the penalty of imprisonment, of the criminal fingerprint; we observe that whatever may be his estimate of his professional license, its actual forfeiture invariably produces a crushing effect on him.

Id. at 363 (emphasis added).

Similarly, BEVILACQUA's loss of his law license is a mitigating factor which the Sentencing Commission did not adequately consider in formulating the Guidelines, and as such, BEVILACQUA may receive a downward departure on this basis. For this reason, a downward departure should be granted to BEVILACQUA so that he is not unduly punished for his crime.

**4. A Sentence Below the Guidelines Range Would be Reasonable**

District Courts have the authority to sentence a defendant below the advisory guideline range. In determining a sentence, the District Court must consult the advisory guidelines and take them into account, but of course may impose a reasonable sentence outside the advisory guideline range. See, United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 767 (2005). Likewise, a District Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a reasonable sentence:

> **(a) Factors To Be Considered in Imposing a Sentence.**— The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed—
>
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)** to afford adequate deterrence to criminal conduct;
>
> **(C)** to protect the public from further crimes of the defendant; and
>
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
>
> **(4)** the kinds of sentence and the sentencing range established for—
>
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or
>
> **(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994 (a)(3) of title 28, United States Code;
>
> **(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994

> (a)(2) that is in effect on the date the defendant is sentenced;
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The nature of BEVILACQUA's offenses and his history and characteristics have been set forth above and in the PSI. In the instant case, especially given how BEVILACQUA's conduct constituted such a marked departure from a previous law-abiding life, a sentence of probation would reflect the seriousness of the offense and act a deterrent. There is a very minimal need, if any, to protect the public from BEVILACQUA, who show very little risk of recidivism as a defendant with no criminal history. A sentence of probation is available in the instant case pursuant to statute and the guidelines as BEVILACQUA's offense level before any downward departure is 10, and therefore in Zone B of the Sentencing Table (as computed in BEVILACQUA's Objections to the Presentence Investigation Report). Moreover, with a minimal downward departure of two levels, BEVILACQUA would be at level 8 and Zone A of the Sentencing Table. Of course, even if this Court were to determine that BEVILACQUA's offense level placed him in a Zone for which probation is unavailable, this Court could still sentence BEVILACQUA below the guidelines range, and to a sentence of probation, upon a determination that such a sentence is reasonable.

BEVILACQUA's request as set forth above complies with 18 U.S.C. § 3553(a) and would amount to a reasonable sentence under the circumstances of this case. As BEVILACQUA has demonstrated above, the nature and circumstances of the offense

demonstrate that he should receive a sentence of probation. With respect to 18 U.S.C. § 3553(a)(2), BEVILACQUA has demonstrated that a term of incarceration is not necessary as a punishment or deterrent, especially given his loss of his license to practice law. In light of all the above, BEVILACQUA humbly suggests that a sentence of probation satisfies all the requirements of 18 U.S.C. § 3553(a) and would be a reasonable sentence under Booker.

## CONCLUSION

Even if this Court finds that none of the mitigating factors contained herein is an adequate basis for downward departure in and of itself, other circuits have held that the aggregate effect of all factors is a permissible basis for a downward departure. In United States v. Broderson, 67 F.3d 452, 458 (2d Cir. 1995), the Second Circuit permitted a downward departure based on the aggregate effect of all factors when no factor individually would justify a downward departure, because the "confluence of circumstances" had not been taken into account by the guidelines. Likewise, the Tenth and Sixth Circuits have both allowed for downward departures based on the aggregate effect of all mitigating circumstances. See United States v. Coleman, 188 F.3d 354 (6th Cir. 1999); United States v. Whitaker, 152 F.3d 1238 (10th Cir. 1998); United States v. Jones, 158 F.3d 492 (10th Cir. 1998). BEVILACQUA, even if not entitled to a downward departure on any one of the mitigating factors listed herein, has presented several factors which, when combined, justify a downward departure sentence.

Finally, even if the factors do not rise to the level of warranting a downward departure, the court may still consider them in determining whether a sentence below the prescribed guidelines range would be reasonable under Booker. As BEVILACQUA has

set forth above, a sentence of probation would be reasonable in the instant case.

**WHEREFORE,** Defendant, **JOSEPH A. BEVILACQUA, JR.**, respectfully requests this Court grant his Motion for Downward Departure and/or Reduction in Sentence, and grant such other and further relief as is just and proper.

Respectfully submitted,

THE LAW FIRM OF
THOMAS A. TARRO, III
Attorneys for Defendant
300 Centerville Road
Summit East, Suite 330
Warwick, Rhode Island 02886

By: [signature]
THOMAS A. TARRO, III
#2046

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was faxed and mailed on this, the 6th day of september, 2005 to: Kenneth Madden, First Assistant United States Attorney, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, Rhode Island 02903.

[signature]
THOMAS A. TARRO, III