# United States Court of Appeals
## For the First Circuit

No. 05-2390

UNITED STATES OF AMERICA,

Appellee,

v.

JOSEPH A. BEVILACQUA, JR.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Torruella, Lynch, and Lipez,
Circuit Judges.

Thomas A. Tarro, III and The Law Firm of Thomas A. Tarro, III, Esq. on brief for appellant.

Donald C. Lockhart, Assistant United States Attorney, Robert Clark Corrente, United States Attorney, and Kenneth P. Madden, Assistant United States Attorney, on brief for appellee.

May 18, 2006

**LYNCH, Circuit Judge**. This case presents the issue of whether a federal court may require a defendant convicted of criminal contempt and perjury to pay for the costs of the investigation of his crimes, when a special prosecutor is appointed under Rule 42, Fed. R. Crim. P. The district court purported to find the authority to award such costs in the statutes permitting taxation of and defining allowable costs, 28 U.S.C. §§ 1918(b) and 1920. We disagree, reverse, and remand to the district court. On remand, the district court may consider whether to impose a fine, which it did not do earlier in light of its taxation of costs.

Joseph Bevilacqua was counsel for a defendant in a major federal corruption investigation of the Mayor of Providence and others. See generally United States v. Cianci, 378 F.3d 71 (1st Cir. 2004) (describing the investigation). As counsel for the indicted defendant, Bevilacqua was provided with a videotape (the Corrente tape) under a strict protective order precluding dissemination of the tape. The tape showed Frank Corrente, the mayor's administrative director, allegedly taking a cash bribe. On February 1, 2001, while the grand jury was still proceeding in its investigation of other individuals (who were later also named as defendants), the embargoed Corrente tape was aired on television by reporter James Taricani and Channel 10 in Rhode Island. The targets of the grand jury investigation asked the district court to

investigate the leak. See In re Special Proceedings, 373 F.3d 37, 40 (1st Cir. 2004).

On May 31, 2001, the district court (Torres, J.) issued an order initiating a criminal contempt investigation, which initially focused on reporter Taricani. Id. at 40-41. The order explained that under Fed. R. Crim. P. 42(a)(2), the matter would normally be referred to the Department of Justice for prosecution, but because government prosecutors were involved in the ongoing criminal prosecution of Corrente, the "interest of justice" required appointment of outside counsel. Id. at 41. The court picked a private attorney, Marc DeSisto, who had previously been a prosecutor, to investigate and act as special counsel; he was assisted by a law firm, Ropes & Gray. Id. at 39, 41. On an earlier appeal by Taricani of a civil contempt sanction, this court affirmed the court's appointment of the special prosecutor. See id. at 40-44.

In November 2004, Bevilacqua confessed to having given the tape to Taricani in violation of the court order, and having repeatedly and untruthfully denied doing so during the course of the special prosecutor's investigation. In May 2005, Bevilacqua pled guilty to perjury, 18 U.S.C. § 1623, and contempt of court, id. § 401(3). In the meantime, the $152,247.39 in bills incurred by the special prosecutor and the firm during the investigation was

paid by the Administrative Office of the United States Courts (AO), as is usual in Rule 42(a) appointments.

Bevilacqua was sentenced by a different judge (Lisi, J.). Before the sentencing hearing, the government papers asked for an order that Bevilacqua repay the AO the $152,247.39 that it had paid to the special prosecutor for the investigation, on a theory of restitution. The Presentence Investigation Report (PSR) did not contain such a recommendation.

At the sentencing hearing, the government abandoned the restitution theory for the proposed order. The court asked by what authority, then, it could order defendant to pay the costs of investigation. For the first time, the government cited to 28 U.S.C. § 1918(b) (permitting the taxing of "costs of prosecution" of non-capital offenses).

The government also referred to the court's inherent authority, an argument which is plainly wrong. There is no inherent authority "to shift litigation costs absent express statutory authority." W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 86 (1991); see also id. at 87 (requiring explicit statutory authority to shift costs of nontestimonial expert fees).

The court directed defense counsel to read § 1918 then and there (since the argument had not been made earlier) and to respond to the new argument. Defense counsel replied that these were "not the cost[s] of prosecution" under § 1918 but of

"investigation," and that defendant could not agree these were appropriate costs. Defense counsel said this was really more like a fine, and that the sum was not a permissible fine here because the Guidelines range for a fine was only $4,000 to $40,000. The government did not argue that these "costs" of investigation were allowable costs as defined under 28 U.S.C. § 1920 and did not reply to the argument that the Guidelines limited a fine. Rather, the government argued that the real victim here was the system of justice and so the requested order was somehow appropriate.

Bevilacqua was sentenced to 18 months of imprisonment, followed by supervised release, and a special assessment of $200. He was also ordered to pay to the AO the "costs associated with the investigation and prosecution" in the amount of $152,247.39, under 28 U.S.C. § 1918. The district court said it was not imposing a criminal fine because it was ordering the payment of costs.

The district court clearly had the power to impose a fine, but that would have presented two practical problems. First, the money would have had to go to the U.S. Treasury and not the AO, which had actually paid the sum. Second, the court would have had to address the question of the Guidelines limitation.

There are several distinctions important to our analysis. The imposition on a defendant of the costs of a special prosecutor is different from ordering a defendant to pay criminal fines. Costs are paid to the entity incurring the costs; criminal fines

are generally paid to a special fund for victims' compensation and assistance in the U.S. Treasury. See 42 U.S.C. § 10601(a), (b); United States v. Sun Growers of Cal., 212 F.3d 603, 606 (D.C. Cir. 2000). Another distinction is that criminal fines, assuming they are subject to the rule of United States v. Booker, 543 U.S. 220 (2005), must still be evaluated in light of the Guidelines range. See United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc). According to Bevilacqua's PSR, the Guidelines fine range was $4,000 to $40,000.

On appeal, Bevilacqua attacks the award of costs of the special prosecutor as not being authorized by 28 U.S.C. § 1920, which sets forth the costs a court or clerk "may tax as costs."[1] The government argues that Bevilacqua has forfeited the argument that § 1920 does not include these sums as allowable costs by not specifically raising it during the sentencing hearing. It is an odd position for the government, since it was the government which advanced the idea that these sums were allowable costs under § 1918 for the first time at the sentencing hearing. Given this sequence, it is clear that Bevilacqua has preserved the issue.

---

[1] Bevilacqua also challenges the process by which the costs were proven to the district court, arguing that the government's schedule of the amount of money paid by the AO to the special prosecutor did not meet the requirements of 28 U.S.C. § 1924. See id. (verification of bill of costs). Since we reverse the imposition of costs on different grounds, we do not address whether the schedule submitted by the government was proper.

The government also suggests that we need not bother with this appeal because the statutory maximum fine is $250,000, and since the Guidelines are only advisory (the sentence was imposed after Booker), "[i]t is likely that if the case were remanded, the court would assess a comparable financial sanction but in the form of a fine." This is not a response to the legal argument that the district court lacked authority to do what it did.

The American legal tradition does not, absent specific statutory authority, require defendants to reimburse the government for the costs of their criminal investigations or their criminal prosecutions. As sanctions, courts order defendants to go to prison. Defendants are required to pay restitution. See 18 U.S.C. § 3663A (requiring an order of restitution for certain crimes). They pay fines and special assessments. See id. §§ 3571, 3013. They forfeit ill-gotten gains. See, e.g., 21 U.S.C. § 853 (forfeiture for drug trafficking); 18 U.S.C. § 982 (forfeiture for money laundering and other crimes).

It is commonplace both that a district court's taxation of costs is reviewed for abuse of discretion, Garcia-Goyco v. Law Envtl. Consultants, Inc., 428 F.3d 14, 18 (1st Cir. 2005), and that an error of law is an abuse of discretion, Rivera-Feliciano v. Acevedo-Vilá, 438 F.3d 50, 63 (1st Cir. 2006). It is also commonplace that there is no discretion to award costs in a criminal case other than as authorized by statute. See Fairmont

Creamery Co. v. Minnesota, 275 U.S. 70, 76 (1927) ("Costs in criminal proceedings are a creature of statute, and a court has no power to award them unless some statute has conferred it." (internal quotation marks omitted) (quoting United States ex rel. Phillips v. Gaines, 25 L. Ed. 733 (U.S. 1880))); see also Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987) (holding that district court authority to tax expert witness fees as costs in civil cases under Fed. R. Civ. P. 54(d) is limited by 28 U.S.C. §§ 1920 and 1821).

There is authorization to award costs against a criminal defendant in § 1918(b), which states: "Whenever any conviction for any offense not capital is obtained in a district court, the court may order that the defendant pay the costs of prosecution." 28 U.S.C. § 1918(b); see also United States v. Banks-Giombetti, 245 F.3d 949, 952 (7th Cir. 2001) (per curiam); United States v. Hiland, 909 F.2d 1114, 1141-42 (8th Cir. 1990); United States v. Gering, 716 F.2d 615, 626 (9th Cir. 1983); United States v. Glover, 588 F.2d 876, 878-79 (2d Cir. 1978) (per curiam); United States v. Pommerening, 500 F.2d 92, 100-02 (10th Cir. 1974).

We hold, and the government does not dispute, that the definition of the items which may be taxed as costs under § 1918(b), unless provided by some other explicit statutory authority, is found in 28 U.S.C. § 1920. Accord Banks-Giombetti, 245 F.3d at 952; Hiland, 909 F.2d at 1142; Gering, 716 F.2d at 626;

cf. In re Two Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litigation, 994 F.2d 956, 962 (1st Cir. 1993) (stating that in a civil case "a district court lacks the ability to assess 'costs' under [Fed. R. Civ. P. 54(d)] above and beyond those that come within the statutory litany," including 28 U.S.C. § 1920).

The government's argument is that § 1920 does authorize this award. The statute provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920. The government argues that these costs are allowable under the clause in § 1920(6), which allows for taxation of the costs of "[c]ompensation of court appointed experts." It notes the phrase is not "expert witnesses" and cites Gaddis v. United States, 381 F.3d 444, 455-57 (5th Cir. 2004) (en banc). It

then argues that "the special prosecution team hired by the court" should be regarded as "court appointed experts." We hold such special prosecutors are surely "court appointed," but they are not "court appointed experts" within the meaning of § 1920(6).

The government's citations do not help its position. The Gaddis case concerned whether court appointed guardian ad litem fees were taxable as costs. The court held that district courts had the authority to tax such fees under Rule 17(c), Fed. R. Civ. P. (authorizing the district court to appoint a guardian ad litem in certain cases). Id. at 453-55. As an alternate holding, the court held that the phrase "[c]ompensation of court appointed experts" in § 1920(6) could reasonably be read to include such fees. Id. at 455. That was because a guardian was like an expert assisting the court with the protection of the best interests of minors and incompetents. Id. at 456. The court noted that such experts partake of quasi-judicial immunity. Id. It pointed out that historically, many federal courts had routinely taxed such costs. Id. at 458 n.17.

This court has not addressed the Gaddis issue. Whether the majority or the strong dissent in Gaddis is correct is not of concern to us here. We think it is entirely unreasonable to read the court appointed expert clause in § 1920(6) to include the costs of special prosecutors appointed under Fed. R. Crim. P. 42. No one considers prosecutors in the U.S. Attorneys' offices, or the agents

in the investigative agencies, to be experts to the court. Their job is not to advise the court but to represent one of two sides in an adversarial system. The fact that the investigator/prosecutor of criminal contempt is appointed by the court under Rule 42, Fed. R. Crim. P, does not turn that person into a court appointed expert. Such a reading runs against history and is unsupported by precedent. We hold that costs consisting of fees paid to special prosecutors appointed under Rule 42 are not allowable as court appointed expert fees under 28 U.S.C. § 1920(6).

The government points to no other statutory authority to justify such an award. The award is contrary to related precedent as well. See United States v. Stefonek, 179 F.3d 1030, 1037 (7th Cir. 1999) (finding error in district court's ordering defendant to pay jury fees). In fact, there is a line of cases, which the government failed to provide to the district court, prohibiting, in any event, the imposition of costs of investigation as costs under § 1918 and § 1920. See Hiland, 909 F.2d at 1142 (costs of investigation leading to indictment are not authorized under § 1920); United States v. Vaughn, 636 F.2d 921, 922 (4th Cir. 1980) (same). That is exactly what is involved here.

The government's position raises serious issues about confusion of the roles of two independent branches of government --

the courts and the prosecutors.[2] See In re United States, 441 F.3d 44, 58, 63 (1st Cir. 2006); see also Reilly v. United States, 863 F.2d 149, 156 (1st Cir. 1988) (technical advisors should be appointed only where there would be no "dislodging [of] the delicate balance of the juristic role"). Further, such a result should not be upheld when Congress has not authorized it.

We reverse. We also remand because the district court said it did not impose a fine because it was taxing these costs. Nothing in this opinion should be read as bearing on the issue of a fine, or a fine of a particular sum.

Reversed and remanded. So ordered.

[2] Indeed, most individuals employed by the United States may not receive a fee as a witness on behalf of the United States. See 5 U.S.C. § 5537(a)(2).